IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:09-CR-572-T-30-TGW

UNITED STATES OF AMERICA,

          Plaintiff,

VS.

MARK ANTHONY MYRIE,

          Defendant.
_____/

**EMERGENCY MOTION FOR BOND OR
FOR ALTERNATIVE RELIEF**

Mark Anthony Myrie, through undersigned counsel, files this Emergency Motion for Bond or for Alternative Relief.

**INTRODUCTION**

"[The] guiding principle [of the Pinellas county jail] is this: guilt is never to be doubted. Other courts cannot follow that principle, for they consist of several opinions and have higher courts to scrutinize them. This is not the case here." – Franz Kafka, The Trial

We did everything we could to avoid filing the instant motion, but the most recent actions carried out against Mark Myrie require us to seek assistance of this Court. Because Mr. Myrie had the audacity to share his food with a hungry inmate, he was sent out of general population and into the maximum security wing of the prison. When Mr. Myrie told the officer that he did not believe that he was doing anything wrong, he was told that he could contest her finding, but if he lost, he would be sent to the hole. Knowing how that would turn out, Mr. Myrie waived his opportunity to contest the hearing and was sent to maximum security for the next 30 days—the most critical 30

days of Mr. Myrie's life as he prepares for trial.

Since being incarcerated in December 2009, Mr. Myrie has lost about 40 pounds and has not been provided with a diet in accordance with his religious views. Although he had been able to make appropriate meals in the kitchen with food he purchased from the commissary, he does not have that ability in his new maximum security wing. In addition, the living areas and kitchen are unsanitary, and the showers do not work. Because he is being treated inhumanely, we have no choice but to file this motion for bond.

**FACTUAL BACKGROUND**

1. Even though he is not a danger to the community or a risk of flight, Mark Myrie—a Grammy-nominated Jamaican reggae artist who is known as Buju Banton—has been in federal custody since December 2009, awaiting trial.

2. Mr. Myrie is being detained because Assistant United States Attorney Jim Preston advised counsel and the magistrate court that Mr. Myrie had an immigration detainer and was ineligible for release. To avoid the inconvenience of Mr. Myrie being transferred into immigration custody, counsel stipulated to detention with the right to revisit the issue of bond if it became necessary. DE 25. As a result, Mr. Myrie has been detained for over four months, separated from his wife, his children, and his music (in fact, he was unable to attend the Grammy Awards where he was a nominee for Reggae Album of the Year).

3. During Mr. Myrie's tenure at the Pinellas County Jail prison officials have repeatedly denied his requests for a vegetarian diet which he requested for religious reasons. As a result, Mr. Myrie has lost about forty pounds while in custody. Mr. Myrie has been moved from floor to floor in the jail without explanation, segregated from his co-defendants without good cause,

2

and treated differently than the other inmates. Nevertheless, Mr. Myrie has chosen not to file a specific complaint about his treatment as he simply wanted to keep the peace and prepare for his upcoming trial. In light of the most recent incident, counsel now feels compelled to intervene on his behalf.

4. On March 18, 2010, Mr. Myrie provided counsel his copy of a form entitled "Corrective Consultation of Inmate" concerning a rule violation. That form indicated that Mr. Myrie failed to obey staff orders by giving food to another inmate, but noted that Mr. Myrie stated he believed "there is nothing wrong with giving food away." The bottom of the form, which would have indicated whether Mr. Myrie waived his right to a disciplinary hearing regarding the above violation, was unsigned. Nevertheless, Mr. Myrie was transferred to the maximum security wing of the Pinellas County Jail.

5. The decision to then place Mr. Myrie in a maximum security wing weeks before his upcoming trial date suggests that something else is going on. Counsel for Mr. Myrie was advised that he would remain in maximum security for at least 30 days, and that there was "nothing we can do about it."[1] In sum, Mr. Myrie is now in a maximum security wing for caring enough to offer food to another inmate who was hungry, and genuinely believing there was nothing wrong in doing so.

6. Transferring Mr. Myrie to maximum security is not only affecting him (Mr. Myrie's mental and physical health has been rapidly deteriorating), but it is affecting undersigned counsel's ability to prepare for trial. For example, this week when counsel attempted to visit Mr. Myrie,

---

[1] Many of the people that we spoke to at the facility tried to help us and agreed that this "violation" was extremely minor. We were told, however, that once the decision was made, it was not going to be overturned. The decision-maker in this case was Corporal Johnson, who has had it out for Mr. Myrie during his entire stay.

counsel was required to wait over two hours until he could see Mr. Myrie. Counsel believes that immigration custody is better than the inhumane treatment that Mr. Myrie is being forced to endure at the Pinellas County Jail. Therefore, counsel is now requesting for an emergency bond hearing.

**MEMORANDUM OF LAW**

Every defendant is entitled to a detention hearing to determine whether any condition or combination of conditions set forth in 18 U.S.C. § 3142(c) will reasonably assure the appearance of such person as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f). Because a hearing has not been held to determine Mr. Myrie's eligibility for bond, he is entitled to one. Therefore, Mr. Myrie respectfully requests that the matter be set for a pretrial detention hearing to entertain his request for bond. *United States v. Montalvo-Murillo*, 495 U.S. 711, 716 (1990)(the Bail Reform Act "only authorizes detention *after a hearing* pursuant to the provisions of subsection (f) of this section") (emphasis added). At such a hearing, we will set forth why a bond is appropriate.

In the alternative, Mr. Myrie requests that he be reclassified to a non-maximum security unit. It is a fundamental principle that the Government may not subject an accused held in pretrial detention to any form of punishment for the crime in which he is charged. *Bell v. Wolfish*, 441 U.S. 520 (1979). Any other proposition would render futile the basic proposition that a person is presumed innocent until proven guilty. *Id.* at 535. Here, Mr. Myrie is being unlawfully punished for being who he is.

We acknowledge that a person lawfully detained in pretrial confinement is subject to certain restrictions on his liberty and the government may take measures reasonably calculated to effectuate pretrial detention. *Id.* at 537. Moreover, government officials may take necessary measures that

4

impose heightened restrictions if such restrictions serve a legitimate government goal *other than punishment. Id.* at 538. If the government's actions are rationally related to a legitimate non-punitive purpose, a court will deem the actions non-punitive unless they *appear excessive in relation to the alleged purpose. Id.*

The Supreme Court, however, set out two different situations in which a court could intervene on behalf of a pretrial detainee: (1) if the condition is specifically imposed on the inmate for the purposes of punishment as opposed to a legitimate governmental purpose; or (2) if evidence of punishment is lacking, a court must determine if the restriction is ''reasonably related'' to a legitimate objective or constitutes an exaggerated response. *Bell v. Wolfish*, 441 U.S. 520 (1979). Courts must be mindful that "these inquiries spring from constitutional requirements and that judicial answers to them reflect that fact rather than a court's idea how best to operate a detention facility." *Wolfish,* 441 U.S. at 539.

As the Supreme Court explained in *Wolfish:* "[i]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon the detainees." The law in this Circuit is equally as strong: "[A]n intent to punish on the part of detention facility officials is sufficient to show unconstitutional pretrial punishment." *Magluta v. Samples,* 375 F.3d 1269 (11th Cir. 2004).

In other words, the Supreme Court and Eleventh Circuit precedent establish that a particular practice or policy amounts to punishment where there is a showing of express intent to punish on the part of prison officials. *Wolfish,* 441 U.S. at 538; *Magluta,* 375 F.3d at 1276 ("[T]he intent to punish may be inferred when a condition of pretrial detention is not reasonably related to a

5

legitimate government goal.").

In exploring these principles, several district courts around the country have held that the nature of the charges for which the defendants were being detained and fear of continuing criminal conduct by the defendants while incarcerated did not justify the inmate's placement in a special detention unit (or maximum security). *See, e.g., United States v. Basciano*, 369 F. Supp. 2d 344 (E.D.N.Y. 2005); *United States v. Suleiman*, 1997 WL 220308 (S.D.N.Y. 1997); *United States v. Gotti*, 755 F. Supp. 1159 (E.D.N.Y.1991). In the absence of any real evidence that the detainees, while in custody, had committed an act or omission that posed a serious threat to the inmates or the security of the institution, their continued detention in maximum security was a violation of the Due Process Clause of the Fifth Amendment of the United States Constitution.

If the likes of Gotti, Magluta, and Basciano could not be thrown into maximum security based on the allegations against them, certainly Mr. Myrie should not be punished merely for helping a hungry inmate. Mr. Mryie's placement in a maximum security wing of the jail for providing food to an inmate in need was arbitrary and purposeless and not reasonably related to a legitimate governmental goal other than severe punishment. The conditions being suffered by Mr. Myrie are completely arbitrary, punitive, unnecessary and are not rationally related to furthering any stated government objectives. Mr. Myrie's mental and physical health continue to diminish, and it is foreseeable that he will not be able to assist his attorneys in the presentation of a defense at trial. Accordingly, we seek the assistance of this Court.

AUSA Preston objects to the relief sought herein.[2]

---

[2]We asked AUSA Jim Preston for his assistance in this matter, but he refused stating that he was not in the business of telling the jail what to do. But that is exactly what he has done in this case. He asked the jail to "keep separate" the three co-defendants in this case – for no

WHEREFORE, Mr. Myrie requests a bond hearing or in alternative, reclassification into a non-maximum security unit.

Respectfully submitted,

/s/ David Oscar Markus
DAVID OSCAR MARKUS
Florida Bar No. 0119318

DAVID OSCAR MARKUS PLLC
Alfred I. duPont Building
169 East Flagler Street, Suite 1200
Miami, FL 33131
Tel: (305) 379-6667
Fax: (305) 379-6668
Email: DMarkus@MarkusLaw.com

/s/ Marc David Seitles
MARC DAVID SEITLES
Fla. Bar No. 0178284

THE LAW OFFICES OF MARC DAVID SEITLES, P.A.
Alfred I. duPont Building
169 East Flagler Street, Suite 1200
Miami, FL 33131
Tel: (305) 379-6667
Fax: (305) 379-6668
Email: mseitles@seitleslaw.com

---

reason other than harass them. Undersigned counsel has asked the AUSA a number of times to lift that separation order so that the defendants could have joint meetings, and AUSA Preston has refused asking for letters from all of the co-defendants before lifting the separation order. As of late last week, AUSA Preston is now in possession of those letters, so that keep separate order should be lifted forthwith.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2010, undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the United States Attorney's Office, Middle District of Florida.

/s/ David Oscar Markus
_____
David Oscar Markus