UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:09-CR-572-T-30-TGW(s)

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARK ANTHONY MYRIE,

    Defendant.
_____/

**DEFENDANT MARK MYRIE'S MOTION FOR JUDGMENT OF
ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29 AND FOR
<u>NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33</u>**

Defendant Mark Myrie (Buju Banton), through undersigned counsel and pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, respectfully moves for the entry of a judgment of acquittal or, in the alternative, requests that the Court grant him a new trial. Mr. Myrie reiterates and incorporates by reference his motions for judgment of acquittal made at the close of the government's case and at the close of all the evidence based on the absence of substantial credible evidence sufficient to prove the allegations beyond a reasonable doubt. Mr. Myrie also reiterates the objections and motions he made before and during the first and second trials. Additional argument in support of the motion is asserted below. With regard to the request for a new trial, in making this determination, the Court must consider whether it is in the interest of justice to let the verdicts stand given the issues that we discuss below.

## FACTUAL BACKGROUND

In this drug and gun case, the core allegation against Mr. Myrie was that he brokered a deal between Ian Thomas and Alexander Johnson (the confidential informant).[1] The government sought to prove its case by presenting: (1) the testimony of Alexander Johnson; (2) tapes and transcripts of calls and meetings; and (3) the testimony of its case agent, a research specialist dealing with the phone calls, and the police officer who seized the gun from James Mack's car on December 10, 2009. The defense in the case was that Mr. Myrie did not know he was going to a warehouse on December 8 (conceded by the government); did not know that he was going to see cocaine (conceded by the government); and, once in the warehouse, presented with cocaine, did not then or at any later time, reach an agreement to possess with intent to distribute cocaine. Further, Mr. Myrie did not willfully participate in or have knowledge of the drug transaction on December 10. Therefore, the gun that James Mack possessed on December 10 was not reasonably foreseeable to Mr. Myrie, especially given the fact that he had never met or even heard of James Mack before. Assuming, *arguendo*, that an agreement was reached, the defense argued in the alternative that the government did not prove beyond a reasonable doubt that Mr. Myrie was not entrapped.

## ANALYSIS

Under Fed. R. Crim. P. 29, this Court must determine, *de novo*, whether there is substantial evidence to support the verdict. *United States v. Russo*, 796 F.2d 1443, 1455 (11th Cir.1986) ("[T]he question is whether there is *substantial* evidence to support the verdicts.") (emphasis added); *United*

---

[1] Subsequently, Ian Thomas brokered a deal between buyers in Georgia and Alexander Johnson, accomplishing what Mr. Myrie did not do for Mr. Johnson in 6 months – a drug deal on December 10, 2009.

*States v. Toler*, 144 F.3d 1423, 1427-28 (11th Cir. 1998) (rejecting argument that "slight evidence" can satisfy government burden in conspiracy case).  Under Fed. R. Crim. P. 33, this Court must determine whether it is in the "interest of justice" to allow the three guilty verdicts against Mr. Myrie to stand.

In this case, the insubstantiality and vagueness of the evidence warrant the granting of a judgment of acquittal.  In addition, apart from the question of sufficiency, it is not in the interest of justice to allow the guilty verdicts to stand for several reasons.

    1.    **MOTION FOR JUDGMENT OF ACQUITTAL**

        A.    **Count 3, the gun count**

The evidence was insufficient to establish either that 1) a firearm was used in furtherance of the drug transaction, or that 2) Mark Myrie could reasonably foresee that a firearm would be used.  The government charged Mr. Myrie, under a *Pinkerton* theory, with possession of a firearm in furtherance of a drug trafficking crime.  Because Mr. Myrie was not present on December 10, 2009, did not possess the gun, and had never even heard of James Mack before (the person who constructively possessed the gun on the 10th), the government had the burden of proving that it was "reasonably foreseeable" to Mr. Myrie that the gun would be used in furtherance of the drug trafficking crime.  The government failed in two respects – 1) it was not reasonably foreseeable to Mr. Myrie; and 2) the gun was not used in furtherance of the drug crime.

There was **no** evidence presented that possession of a gun by another was "reasonably foreseeable" to Mr. Myrie.  In *Pinkerton* the Supreme Court required -- in order to attach vicarious liability for the substantive offense committed by another member of the conspiracy -- that the

substantive offense committed by the co-conspirator was not "merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946).

The only evidence presented to the jury in this case was the general claim that guns and drugs go together. Such testimony, however, is insufficient to prove that Mr. Myrie could have reasonably foreseen that James Mack would bring a gun to the warehouse on December 10, especially given he did not even know that James Mack would be going to the warehouse in the first instance. Although courts have recognized a connection between guns and drugs, there is **no** presumption of foreseeability. *United States v. Gonzalez*, 918 F.2d 1129, 1136 (3d Cir. 1990). Accordingly, to demonstrate foreseeability, the government must prove something more than the general proposition that guns and drugs go together.

Generally, convictions are upheld under a *Pinkerton* theory where there are some discussions about a gun being present. In *United States v. Sanders*, 421 F.3d 1044, 1049 (9th Cir. 2005), an appellate court found that use of a firearm was foreseeable because the defendant was present when the co-conspirators agreed to use a gun and the defendant stated "that's cool, too, if you -- I guess if you want to use a gun, use a gun." Similarly, in *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1204 (9th Cir. 2000), the Ninth Circuit affirmed a § 924(c) conviction because a defendant who transported marijuana actually saw a co-conspirator in possession of a firearm. None of that type of evidence was presented here. Not only did Mr. Myrie not know or even hear of James Mack, there was never any discussion (general or otherwise) about a gun being present.

The Eleventh Circuit has been careful to note due process considerations for minor

participants (like Mr. Myrie) when considering *Pinkerton* liability. *United States v. Alvarez*, 755 F.2d 830, 851 n. 27 (11th Cir. 1985) (noting that courts should examine *Pinkerton* liability carefully for someone who had a "minor role in the conspiracy" if he did not have "actual knowledge of at least some of the circumstances and events" that culminated in the substantive crime); *United States v. Casteneda*, 9 F.3d 761, 767 (9th Cir. 1993) (holding that it would violate due process to find a defendant vicariously liable under § 924(c) when "the relationship between the defendant and the substantive offense is slight," stating that the known nexus between drugs and firearms did not create a presumption of foreseeability). Here, Mr. Myrie had no knowledge of any of the events surrounding the gun. Moreover, in all appellate cases involving §924(c) convictions based on *Pinkerton*, the defendants knew the co-conspirator who possessed the gun. As set forth above, it is undisputed that Mr. Myrie did not know Mr. Mack.

Undersigned counsel has not found any case in which a defendant was held criminally liable for a firearm under facts similar to those presented here. Accordingly, because the government has presented no evidence that the gun was reasonably foreseeable to Mr. Myrie, the Court should enter a judgment of acquittal on this count.

It is worth noting that Ian Thomas, the person who Mr. Myrie supposedly conspired with, and who was present on December 10, 2009 with James Mack, is **not** being held responsible for the firearm. The government dismissed this charge against him. It would be an odd result indeed if Mr. Myrie was found responsible for the firearm when the only person who he is said to have conspired with and who was present on December 10, is not similarly responsible.

Second, the government has not proven that the gun was used in furtherance of a drug

trafficking crime. As the Court instructed the jury, the government was required to prove that the firearm "helped, promoted, or advanced the crime in some way." The government presented **no** evidence that the firearm helped, promoted, or advanced the crime in any way. In fact, the gun was found in Mr. Mack's car, concealed in a secret compartment and hidden in a garbage bag, inside of a ziplock bag, inside of a paper bag. It was not used or carried during the drug transaction. It was not referred to or shown. And it was not readily accessible had James Mack needed it.[2] The government has proven nothing other than mere presence of the gun in the general vicinity in this case.

It is worth noting that many cases in the Eleventh Circuit examine whether the firearm was "easily accessible" to a defendant during a drug crime. *See, e.g., United States v. Kirby*, 208 Fed. Appx. 694 (11th Cir. 2006) (noting firearm in defendant's boot was "easily accessible"). Here, because the gun was remote from the transaction that was occurring, and was hidden in a secret compartment and within numerous bags, it was not easily accessible. Therefore, the firearm conviction should be reversed on this element as well.

Finally, in addition to these arguments, we preserve the argument that the government constructively amended the aiding and abetting theory of the gun as charged in the first trial and only changed its theory to *Pinkerton* liability at the charge conference. (Doc. 198).

### B.   Count 1, the conspiracy count

On a conspiracy count, the government must present "substantial evidence" of guilt. *United*

---

[2]Even if it was, mere proof that a gun was present withing the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to sustain a 924(c) conviction. *United States v. Suarez*, 313 F.3d 1287 (11th Cir. 2002).

*States v. Russo*, 796 F.2d 1443, 1455 (11th Cir.1986) ("[T]he question is whether there is *substantial* evidence to support the verdicts.") (emphasis added); *United States v. Toler*, 144 F.3d 1423, 1427-28 (11th Cir. 1998) (rejecting argument that "slight evidence" can satisfy government burden in conspiracy case).

The government has not presented substantial or sufficient evidence that Mr. Myrie entered into an agreement with Ian Thomas to do a drug deal on December 10, 2009. Alexander Johnson testified repeatedly that no deal was reached on December 8 when Mr. Myrie was present. In fact, Mr. Johnson stated that it was "a miracle" that he was able to reach a deal with Ian Thomas on December 9 and 10. There is no evidence that Mr. Myrie knew of this deal or became a willful participant in this deal. There is no evidence of any further communication between Alexander Johnson and Mr. Myrie, and the government chose not to call Ian Thomas on this point. In contrast, there was a great amount of evidence that Ian Thomas told Alexander Johnson that he was the broker, that Mark Myrie had nothing to do with this, and that Mr. Myrie knew nothing about this. Gov't Exhibit 23b.

As the Court knows, Mr. Myrie was not told that he was going to the warehouse two days earlier to do a drug deal or to even see drugs. Mr. Myrie's mere presence on December 8, of course, cannot be sufficient to convict him of this count. *United States v. Stanley*, 24 F.3d 1314 (11th Cir. 1994) (mere presence at scene insufficient); *see also United States v. Villegas,* 911 F.2d 623 (11th Cir.1990) (holding that the defendant's looking left and right in the vicinity of the defendant's brother's cocaine deal was not sufficient to show participation in the conspiracy); *United States v. Jenkins,* 779 F.2d 606 (11th Cir. 1986) (mere presence does not support conviction); *United States*

*v. Sullivan,* 763 F.2d 1215 (11th Cir. 1985) (mere presence does not support conviction).

The government's theory that Mr. Myrie introduced Ian Thomas to Alexander Johnson is insufficient as a matter of law. A case that presents strikingly similar facts is *United States v. Fernandez*, 797 F.2d 943 (11th Cir. 1986). In that case, the defendant's drug conspiracy was reversed where the defendant introduced a co-conspirator to a pilot who had discussed a drug importation venture. The court held that this did not amount to agreeing to participate in the conspiracy to import drugs. *See also United States v. Kelly,* 749 F.2d 1541 (11th Cir. 1985) (one defendant's conviction for conspiracy to possess drugs with intent to distribute reversed where evidence showed only acquaintance with principal defendant, and inspection of boat which was later used to smuggle contraband).

Moreover, the government's reliance on Mr. Myrie's phone calls to Ian Thomas on December 9 and 10 are insufficient. As an initial matter, the defense was able to show that it was not out of the ordinary for Mr. Myrie to make this number of calls to his friend. Ian Thomas actually told the government that none of these calls were drug related. In any event, association with a conspirator is insufficient to convict a person of being a member of the conspiracy. *United States v. Newton*, 44 F.3d 913 (11th Cir. 1994). Rather, the defendant must, in some manner, willfully associate himself in some way with the criminal venture and willfully participate in it as he would in something he wished to bring about. *Id.* In *Newton*, the government failed to prove the defendant's participation in the drug conspiracy even though he was friends with the principal member of the conspiracy and even though he rented a house in his name, which he allowed the principal to occupy. The Eleventh Circuit held that this evidence did not show any involvement in the illicit objects of the conspiracy.

So too in this case: Mr. Myrie's friendship and frequent association and calls with Ian Thomas did not amount to willful participation in the conspiracy.

"Vague and general" conversations between Alex Johnson and Mark Myrie are also insufficient. *See United States v. Fernandez*, 797 F.2d 943, 948-49 (11th Cir. 1986) (even in a drug conspiracy, assent to object of conspiracy requires more than mere vague language); *United States v. Young*, 39 F.3d 1561, 1565-66 (11th Cir. 1994) (speculation as to interpretation of words used by defendant drug seller – which may or may not have had a coded meaning relating to a drug supplier – insufficient to prove drug conspiracy); *United States v. Gonzalez*, 183 F.3d 1315, 1324-25 (11th Cir. 1999) (ambiguous statement regarding "Cali" in course of home invasion did not prove knowledge of drug connection).

Here, Agent McCaffrey and Alex Johnson testified to the "vague and general" statements Mr. Myrie made in the recorded calls and meetings. According to the case agent, these communications were insufficient evidence to obtain a search warrant of Mr. Myrie's home, a wire of his telephone, or a subpoena for his text messages. And as AUSA Preston repeatedly argued, it was Mr. Myrie's words which created the circumstance he was in, as there were no actions by Mr. Myrie which led to the December 10 drug deal. Accordingly, based on the above-cited Eleventh Circuit cases, the drug conspiracy conviction should be reversed.

   **C.**   **Count 4, the telephone count**

The Court reserved ruling on this count when the defense moved for a judgment of acquittal at the end of the government's case. Regarding Count 4, the government's theory was that on December 8 in the warehouse, Mark Myrie aided and abetted Ian Thomas' use of the telephone to

facilitate a drug trafficking offense. This theory fails as a matter of law under the Eleventh Circuit case of *United States v. Rivera*, 775 F.2d 1559 (11th Cir. 1985).

The *Rivera* court explained: "In order to prove a violation of 21 U.S.C. 843(b), the government must establish that the defendant knowing and intentionally used a ... telephone to facilitate the commission of a narcotics offense. In order to establish the facilitation element, the government must show that the telephone call comes within the common meaning of facilitate – 'to make easier' or less difficult, or to assist or aid." *Id.* at 1562 (internal citations omitted).

The government's theory here was that by suggesting to Ian Thomas that he ask "how much" to the people on the phone, Mark Myrie facilitated the drug offense. But the *Rivera* court found that such talk does not qualify as facilitation under the statute: "communications [that are] an attempt to find out how the deal was progressing," did not facilitate a drug deal. *Id.* at 1563. The defendant in that case went so far as to ask a co-conspirator specific questions about the drug deal: "how are we doing with sales, and where is the money?" The court found that this was "not proof of facilitation." *Id.*

Here, the one line that forms the basis of the government's charge is far less incriminating than the calls in *Rivera*. Right after Mr. Myrie mentions to Thomas to ask the people on the phone "how much," Alexander Johnson volunteers that they (Thomas, Johnson, and the people on the phone) are discussing 30 kilograms. Ian Thomas does not even repeat the question over the phone that Mr. Myrie had posed. Therefore, there is no way that Mr. Myrie's one sentence facilitated the drug transaction in this case.

The drug deal on the 10th had <u>nothing</u> to do with Mr. Myrie's question on the 8th and his question did not facilitate that deal. Mark Myrie did not instruct Ian Thomas to make the call, give him the phone number to call, or ever get on the phone himself. Consequently, this count should be vacated.

### D.     Entrapment

Because the government has failed as a matter of law to offer evidence sufficient to permit a jury to conclude beyond a reasonable doubt that Mark Myrie was predisposed to engage in the charged misconduct, this Court must grant judgment on his behalf pursuant to Fed. R. Crim. P. 29. If ever there was a case to do so, this is it – even more so than the seminal case of *Jacobson*.

In *Jacobson v. United States*, 503 U.S. 540 (1992), the Supreme Court reversed a child pornography conviction on the basis that the government failed to prove beyond a reasonable doubt that the defendant was disposed to commit the crime prior to being approached by government agents. *Id.* at 549. The Supreme Court pointed to the fact that the defendant had not committed any similar crime before the initial government contact, and emphasized the significance of the government's lengthy campaign of repeated communications which finally motivated the defendant to act. As the Court stated, "although [the defendant] had *become* predisposed to break the law [by the time he did so], it is our view that the government did not prove that this predisposition was independent and not the product of the attention that the government had directed at petitioner . . ." *Id.* at 550.

Similarly, in this case, the government failed to offer **any** evidence that Mr. Myrie was predisposed to engage in the charged offenses. To the contrary, the government's own evidence and

witnesses established that Mr. Myrie was targeted at random in the business class cabin of a flight from Madrid February 28, 2011 to the United States by a professional informant acting on his own initiative, that the informant contacted Mr. Myrie numerous times over a 6 month period, and that Mr. Myrie never initiated conversations about drug trafficking, but rather these conversations were always started by the informant. Even Alexander Johnson testified that he did not believe Mr. Myrie was a real drug trafficker and instead believed that Mark Myrie was just talking.

Nevertheless, he pursued Mr. Myrie in a number of strategic (and sinister) ways. Mr. Johnson conceded he brought up drugs only after making sure that Mr. Myrie had a significant amount to drink. Johnson also testified that he would not have stopped pursuing Mr. Myrie unless he was told to do so, which could never happen as he was not being supervised. He viewed it as his mission to continue indefinitely, even after Mr. Myrie cancelled a number of meetings and failed to return his calls. Johnson went so far as to use Mr. Myrie's family and job as ways to keep him on the hook, as Johnson realized that this was a way to "play the game."

Of course, Johnson also had a significant financial motivation for pursuing Mr. Myrie. He was in financial straights owing hundreds of thousands of dollars to different creditors, including the IRS. In the end, he was able to net $50,000 here.

To be sure, these points and others also establish the second element of entrapment - inducement by the government – but these are "related elements" that both rely upon evidence of "whether criminal intent originated with the defendant or with government agents." *United States v. Theagene*, 565 F.3d 911, 918-19 (5th Cir. 2009) (internal quotations omitted) (reversing

conviction for failure to give entrapment instruction). Given the absence of any contrary evidence of predisposition, the government cannot meet its burden of showing predisposition.

Indeed, this case is strikingly similar to *United States v. Odeesh*, 937 F. Supp. 637 (E.D. Mich. 1996), in which the court granted a judgment of acquittal after a trial. The court found that the absence of prior criminal activity on the part of the defendant and the fact that the deal was proposed first by a government agent who then peppered him with requests for drugs over a six month period were both relevant to a finding of lack of predisposition. *Id.* at 640. The court also pointed to the fact that until the day he finally relented, the defendant was "never ready to do the 'deal' today, always tomorrow or at some later time." *Id.*

Just like the defendant in *Odeesh*, Mr. Myrie was "naive and demonstrated a misguided sense of loyalty to a friend, or potential friend, but his character, reputation, lack of prior criminal involvement and obvious reluctance to comply with the government agent's repeated requests for cocaine support the court's conclusion that [the defendant] was not predisposed to the criminal activity before his initial contact with the government's agent." *Id.* at 641. This constitutes precisely the sort of evidence that establishes a lack of predisposition, especially in light of the lack of evidence to the contrary.[3]

As the Supreme Court has made clear,

---

[3] The Fifth Circuit confirmed the relevance of these factors in *United States v. Bradfield*, 113 F.3d 515 (5th Cir. 1997), referencing as relevant to the predisposition element the fact that the reverse-sting operation was the paid informant's idea, that the informant made "innumerable" telephone calls to the defendant to entice him to do the deal, and that the informant was motivated by the potential of a substantial monetary reward to get the deal done. *United States v. Bradfield*, 113 F.3d 515 (5th Cir. 1997).

> Law enforcement officials go too far when they implant in the mind of an innocent person the *disposition* to commit the alleged offense and induce its commission in order that they may prosecute. . . . When the Government's quest for convictions leads to the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law, the courts should intervene.

*Jacobson*, 503 U.S. at 553-54 (internal quotations omitted) (emphasis in original).

This case is far more egregious than *Jacobson* and this Court should find that the government has not met its burden.

In the alternative, should this Court find that the government has proven predisposition beyond a reasonable doubt, the Court should still reverse as Mr. Johnson's conduct in this case was outrageous. The Supreme Court noted long ago that even if a defendant is predisposed to commit a crime, the judicial system would not tolerate outrageous government conduct in entrapping a defendant: "We may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973) (Rehnquist, J.). Indeed, this Circuit has recognized that informants being paid contingency fees can be considered as outrageous. *United States v. Shearer*, 794 F.2d 1545 (11th Cir. 1986). So too for the Florida Supreme Court. In *State v. Glosson,* 462 So.2d 1082 (Fla.1985), the court determined that the undisputed behavior of law enforcement officials entering a contingency contract to obtain convictions, *i.e.*, agreeing to pay the informant ten percent of all civil forfeiture proceedings conditioned upon his cooperation and testimony in the criminal prosecution, violated the due process clause of the Florida Constitution.

In this case, the cumulation of Alexander Johnson's outrageous conduct, Johnson's habitual behavior of violating the law, and law enforcement rewarding his actions with contingency fees and continued employment violated the due process rights of Mark Myrie. As a result, this Court should not permit the convictions to stand.

    2.    **MOTION FOR NEW TRIAL**.

Federal Rule of Criminal Procedure 33 states that on motion of the defendant, the court may grant a new trial if required in the interest of justice. The decision to grant or deny a new trial motion is within the sound discretion of the trial court and will not be overturned on appeal unless the ruling is so clearly erroneous as to constitute an abuse of discretion. *United States v. Pedrick*, 181 F.3d 1264 (11th Cir. 1999).

Unlike the Rule 29 motion above, in reviewing a motion for new trial, "the district court may weigh the evidence and consider the credibility of the witnesses." *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004). The decision to grant or deny a motion for new trial based on the weight of the evidence is within the sound discretion of the trial court. "A district court has much more power to grant a motion for new trial than it does to grant a motion for judgment of acquittal." *United States v. Ward*, 274 F.3d 1320, 1323 (11th Cir. 2001) (citations omitted). The district court's decision will be set aside only for a clear abuse of that discretion. *Id.* In *Ward*, the Court held that in evaluating a motion for a new trial, the "district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Id*. (internal quotation and citation omitted). In determining whether to grant the motion, the Court must carefully weigh the evidence and may assess the credibility of the witnesses.

*See United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir.1985)*; United States v. Tarango*, 396 F.3d 666, 672 (5th Cir.2005). Granting a new trial based on a finding that a jury's verdict is contrary to the weight of the evidence does not violate the double jeopardy clause. *Freer v. Dugger*, 935 F.2d 213, 217 (11th Cir. 1991).

Even if the Court were to find the evidence sufficient to prove each element beyond a reasonable doubt, the interest of justice would still warrant a new trial in this case for several reasons. To begin with, the arguments set forth above call for a new trial in the interest of justice. In addition, a new trial is appropriate as a result of the following issues:

### A.     The phone record argument

The government made a big show of Mr. Myrie's alleged call to Alexander Johnson on December 10. The downfall in the government's argument is that there was no evidence that the call occurred as they claimed. In fact, the government's own witness, Bonnie Godshall, explained that she could not tell which calls were incoming and which were outgoing. She also said the phone records were a mess and could not be relied on. Yet, the government argued in closing that this one phone call demonstrated that Mr. Myrie was guilty because he initiated the call.

The government also argued that the phone records "clearly" showed which calls were incoming and outgoing. The defense objected to these arguments and the Court sustained the objection and instructed the government that it could argue that "inferences" showed it was an outgoing call. This instruction was not enough. The government should not have been able to argue that Mr. Myrie made this call – even inferentially – when there was no evidence to support this. This

was even more problematic because the government waited until rebuttal closing to make this improper argument, precluding the defense from responding.

### B.     Mack proposed testimony

The jury convicted Mr. Myrie on the gun count even though Mr. Myrie had no connection to the gun. This shows how important it was to have Mr. Mack testify or at a bare minimum to have his affidavit (Def. Ex. 21) admitted, which the Court refused to allow. Accordingly, the Court should order a new trial on the gun count.

### CONCLUSION

For the reasons stated above, Mark Myrie respectfully submits that the interest of justice can only be achieved if the guilty verdicts obtained at trial are vacated and a judgment of acquittal entered or, alternatively, new trial ordered.

Respectfully submitted,

**MARKUS & MARKUS PLLC**
40 N.W. Third Street
Penthouse One
Miami, Florida  33128
Tel: (305)379-6667
Fax: (305)379-6668
www.markuslaw.com

By:     /s/ David Oscar Markus
        DAVID OSCAR MARKUS
        Florida Bar Number 119318
        Dmarkus@MarkusLaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was e-filed this 1st day of March 2011, and served on all appropriate parties through that system.

/s/ David Oscar Markus
David Oscar Markus
